IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ROBERT JAMES THOMAS,            )
                                )
        Plaintiff,              )
                                )
v.                              )  Case No. CIV-17-90-D
                                )
JOSEPH K. LESTER, Sheriff of    )
Cleveland County in his individual )
and official capacities; *et al.*, )
                                )
        Defendants.             )

## **O R D E R**

This matter is before the Court for review of the Report and Recommendation [Doc. No. 62] issued by United States Magistrate Judge Suzanne Mitchell pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Judge Mitchell recommends granting the Motion to Dismiss [Doc. No. 45] of Defendants Joseph K. Lester and the Cleveland County Board of County Commissioners, and dismissing this action without prejudice to a future filing.[1]

Plaintiff Robert James Thomas, a state prisoner appearing *pro se* and *in forma pauperis*, has filed a timely written objection [Doc. No. 63]. Thus, the Court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ.

---

[1] Plaintiff is proceeding under the Amended Complaint [Doc. No. 47], filed January 8, 2018, that lists additional defendants (two individuals who denied his grievances and unknown "John and Jane Does"). However, Plaintiff has not attempted service of process for these defendants, and none has voluntarily appeared. Thus, they are subject to dismissal for lack of service pursuant to Fed. R. Civ. P. 4(m).

P. 72(b)(3). The Court "may accept, reject or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).

This civil rights action under 42 U.S.C. § 1983 involves claims that Plaintiff's constitutional rights were violated by Defendants' adoption in 2016 and enforcement during Plaintiff's pretrial detention of a written policy that banned juvenile visitors, including Plaintiff's minor son, from the Cleveland County Detention Center or jail. Plaintiff has filed an Amended Complaint that enumerates three claims or theories of relief: Claim 1, denial of due process in violation of the Fourteenth Amendment, in that the policy constituted punishment of pretrial detainees; Claim 2, violation of the First and Fourteenth Amendments, in that the policy impinged a constitutional right of familial association and privacy; and Claim 3, intentional interference with the parent-child relationship in violation of the Fourteenth Amendment. *See* Am. Compl. [Doc. No. 47] at 6-8. Plaintiff seeks compensatory and punitive damages, as well as injunctive and declaratory relief. *Id.* at 9.

## Mootness

Judge Mitchell first finds that Plaintiff's request for injunctive relief is moot. Soon after the case was filed, the challenged policy was revised effective February 27, 2017, to allow juvenile visitation through video-conferencing under detailed procedural guidelines.[2] Plaintiff objects to Judge Mitchell's finding of mootness because "Defendants have shown a strong reluctance to respect the right of familial privacy and association" and Plaintiff

---

[2] All visitation at the Cleveland County jail "is conducted by way of video." *See* Special Report, Ex. 1 [Doc. No. 25-1]; Am. Compl. [Doc. No. 47] at 11.

believes Defendants "will revoke the ability of parents to maintain visitation with their children" if an injunction is not issued. See Obj. at 1.[3]

Plaintiff's speculative concern about Defendants' sincerity is insufficient to establish a likelihood that he will be subjected to a visitation ban by Defendants in the future, particularly where Plaintiff is no longer detained in the Cleveland County jail but has entered the state prison system. During the pendency of this case, Plaintiff was convicted of state criminal charges, committed to the custody of the Oklahoma Department of Corrections, and transferred to a prison facility.[4] "[W]here a prisoner is no longer housed at the penal institution having the conditions of confinement that form the basis of his suit, declaratory relief – as well as injunctive relief – is ordinarily not available."

---

[3] In a reply brief, Plaintiff cites another civil rights case in this district in which Defendants allegedly failed to complete an agreed change in policy. Plaintiff's reply brief was not authorized by Fed. R. Civ. P. 72(b)(2) (which permitted Defendants to respond to Plaintiff's objection), or by the Court. Thus, it is not properly before the Court. Further, Plaintiff is incorrect in arguing that Defendants demonstrated in the prior case an unwillingness to follow the law. Defendants complied with the consent decree entered by Judge Heaton; Plaintiff's allegation that they failed to file a required report regarding training, although initially accepted by Judge Heaton, proved to be incorrect. See Prison Legal News v. Lester, Case No. CIV-16-198-HE, Order (W.D. Okla. Jan. 31, 2017).

[4] Publicly available state court records show that Plaintiff pleaded guilty to felony offenses in August 2017, and was sentenced in October 2017 to a 10-year term of imprisonment with all but the first five years suspended. See State v. Thomas, Case No. CF-2015-792 (Dist. Ct. Cleveland Cty., Okla.), available at http://www.oscn.net/dockets/GetCaseInformation.aspx?db=cleveland&number=CF-2015-792&cmid=2200817 (last visited August 13, 2018). The Court may take judicial notice of such records in connection with proceedings under Rule 12(b)(6). See Pace v. Swerdlow, 519 F.3d 1067, 1072 (10th Cir. 2008); Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); see also United States v. Ahidley, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (federal courts "may exercise our discretion to take judicial notice of publicly filed records in our court and certain other courts"). Further, Plaintiff has filed notices in this case of his initial transfer to the Lexington Assessment and Reception Center [Doc. No. 34] and his later placement at the Jim E. Hamilton Correctional Center in Hodgen, Oklahoma [Doc. No. 39].

*Jordan v. Sosa*, 654 F.3d 1012, 1028 n.17 (10th Cir. 2011). Plaintiff does not allege any circumstances that would warrant a deviation from this rule. An injunction requiring Defendants "to respect the fundamental right to family relations" in their visitation policy (Am. Compl. at 9) would not affect visitation at Plaintiff's current place of confinement, and an injunction or a declaration directed to Defendants' past conduct would not afford Plaintiff any relief. The Court therefore finds that Plaintiff's requests for injunctive and declaratory relief are moot.

### Plaintiff's § 1983 Claims

Regarding the merits of Plaintiff's claims for damages, Judge Mitchell finds that the Amended Complaint lacks sufficient well-pleaded factual allegations to state a plausible § 1983 claim.

**1. Conditions of Pretrial Confinement**

The conditions of a pretrial detainee's confinement are constitutionally protected under the Due Process Clause of the Fourteenth Amendment. *See Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 647 (10th Cir.), *cert. denied sub nom. Dale v. Rife*, 138 S. Ct. 364 (2017), and *Jefferson v. Rife*, 138 S. Ct. 364 (2017) (medical care); *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (excessive force). "[P]retrial detainees (unlike convicted prisoners) cannot be punished at all," let alone in a cruel and unusual manner. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015) (considering appropriate due process standard for pretrial detainee's excessive force claim). The government "may subject [a pretrial detainee] to the restrictions and conditions of the detention facility [only] so long as those conditions and restrictions do not amount to punishment, or otherwise

4

violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). In assessing a pretrial detainee's claim, a court must distinguish between "punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may." *Id*. at 537. To determine if a pretrial detainee has been subjected to punishment,

> we must ask whether an expressed intent to punish on the part of the detention facility officials exists. If so, liability may attach. If not, a plaintiff may still prove unconstitutional punishment by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective.

*Blackmon v. Sutton*, 734 F.3d 1237, 1242 (10th Cir. 2013).

Recently, in adopting an objective standard to govern a pretrial detainee's excessive force claim in *Kingsley*, the Supreme Court found support in precedents like *Bell*. The Court reaffirmed that even "in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *See Kingsley*, 135 S. Ct. at 2473 (quoting *Bell*, 441 U.S. at 538, 561). The Court observed that the objective standard endorsed in *Bell* can be used to evaluate a variety of prison conditions or practices, and need "not consider the prison officials' subjective beliefs about the policy." *Id*.

Here, Plaintiff alleges no facts to suggest that Defendants' decision to prohibit juvenile visitation in the Cleveland County jail was intended as punishment, but this lack of subjective evidence is not dispositive.[5] The question becomes whether Plaintiff has

---

[5] To show a punitive purpose, Plaintiff relies on comments made by detention officers who denied his inmate grievances. He does not allege these individuals were policymakers or

5

alleged facts that would show, objectively, the juvenile visitation ban lacked a rational relationship to a legitimate governmental objective or purpose. Plaintiff admits that Defendants expressed a *parens patriae* reason for the policy, that is, to protect children from exposure to certain criminals, such as pedophiles, and inappropriate behavior. *See*, *e.g.*, *Gomes v. Wood*, 451 F.3d 1122, 1128 (10th Cir. 2006) (governments "have a *parens patriae* interest in preserving and promoting children's welfare"). Plaintiff instead has argued that "[t]he parent is in charge of the child's best interests and welfare" and "[i]t is not for the Sheriff to second-guess a parent's judgment and prevent the child from seeing their loved one." *See* Pl.'s Resp. Def.'s Mot. Dismiss [Doc. No. 55] at 5.

Although Plaintiff views Defendants' rationale for the policy as insubstantial or their solution as overbroad, he does not allege facts that would show Defendants' concerns were unfounded. Even under the new policy, there remain substantial limitations on juvenile visitation to ameliorate safety and security issues.[6] For example, the policy requires prescreening of requests for juvenile visits according to strict guidelines and procedures set forth in the policy, including consent of the custodial parent, notice to the prosecutor, and sex-offender background checks of the inmate. *See* Special Report, Ex. 2 [Doc. No. 25-2] at 2. These limitations clearly reflect valid concerns that also underlaid the original ban. The question remains whether Plaintiff has alleged sufficient facts to

---

authorized to speak on policy matters. Further, the Court disagrees with Plaintiff's view of the comments as suggesting a punitive intent behind the policy.

[6] The Court may take judicial notice of the existing policy as a public record whose authenticity is undisputed. *See supra* note 4.

show that the visitation ban applied to pretrial detainees lacked a rational relationship to the expressed purpose, or was not reasonably tailored to serve that purpose.

On this point, upon *de novo* consideration, the Court respectfully disagrees with Judge Mitchell's assessment of the Amended Complaint.[7] First, Plaintiff complains about a visitation policy that applied to all jail inmates; he provides no factual allegations to suggest that Defendants could have provided a different visitation policy only for pretrial detainees. As a general prison policy, the juvenile visitation ban was rationally related to the purposes for which it was adopted. *See*, *e.g.*, *Overton v. Bazzetta*, 539 U.S. 126, 133 (2003) (restrictions on prison visitation by children are rationally related to valid governmental interests, including protecting children from harm).

Regarding the reasonableness of a visitation ban, the Supreme Court has articulated factors to be considered in deciding whether a prison regulation withstands constitutional scrutiny. In addition to "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," other relevant factors are: "whether there are alternative means of exercising the right that remain open to prison inmates;" "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and "the

---

[7] In making this assessment, the Court has considered additional facts argued in Plaintiff's response to Defendants' Motion to Dismiss. To the extent these facts are outside the Amended Complaint, the Court notes that Plaintiff has requested leave to further amend his pleading to add them, if it is found to be deficient, and that Judge Mitchell has recommended a dismissal without prejudice. Under the circumstances, the Court exercises its discretion to consider these additional matters, which are "consistent with the facts and theories advanced in the complaint." *See Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001).

absence of ready alternatives." *See Turner v. Safley*, 482 U.S. 78, 89-90 (1987) (internal quotation omitted); *see also Overton*, 539 U.S. at 132.

Although Plaintiff provides a slim factual basis to evaluate these factors, the Court finds that he provides minimally sufficient facts to state a plausible claim that a visitation ban applicable to all minors, including his son, was excessive in relation to Defendants' expressed purpose. Plaintiff alleges the ban was absolute and permitted no exceptions. He also alleges the only alternate means for him to maintain contact with his three-year-old son was by mail – meaningless "scribbles" to a preschool child – because he "could not afford the high cost of jail calls." *See* Pl.'s Resp. Def.'s Mot. Dismiss [Doc. No. 55] at 10. Plaintiff contends Defendants' revised juvenile visitation policy shows the existence of an available alternative for permitting juvenile visitation, and the swift change of policy shows the alternative was readily available. While the new policy may carry administrative burdens, the fact that Defendants are willing to assume those burdens suggests the impact of juvenile visitation on detention officers or other inmates, or on a general allocation of resources, was not unmanageable.[8] In short, Plaintiff provides sufficient factual allegations from which to conclude that Defendants' juvenile visitation ban for pretrial detainees was not reasonably tailored to its purpose.

---

[8] Plaintiff points out that federal courts have previously found juvenile visitation bans by county jails to be unconstitutional. *See* Pl's Resp. Def.'s Mot. Dismiss [Doc. No. 55] at 5-6 (citing *Valentine v. Englehardt*, 474 F. Supp. 294 (D.N.J. 1979)). *See also White v. Puzin*, No. 1:12-cv-00917-BAM, 2016 WL 6124234, *8-11 (E.D. Cal. Oct. 19, 2016) (collecting cases). In a prior ruling in *White*, the Ninth Circuit had held Plaintiff's allegations "that he could not see his children because the jail did not permit visitation by minors under age 12" . . . "liberally construed, were sufficient to warrant ordering defendants to file an answer." *White v. Pazin*, 587 F. App'x 366, 367 (9th Cir. 2014).

For these reasons, the Court finds that Plaintiff has stated a plausible § 1983 claim that Defendants' ban on juvenile visitation in the Cleveland County jail constituted punishment of a pretrial detainee in violation of the Fourteenth Amendment. Thus, the Court finds that Defendants are not entitled to dismissal of the Amended Complaint with respect to this claim.

### 2. Familial Association

A pretrial detention policy also may be unenforceable if a specific constitutional right is violated. Plaintiff asserts in Claim 2 that Defendants deprived him of a "liberty right of familial association and privacy" under the First and Fourteenth Amendments by imposing an absolute ban on visits from his minor son without due process. *See* Am. Compl. at 7. Plaintiff complains that Defendants' policy lacked any mechanism to seek an exception or consideration of individual circumstances and that, despite his repeated efforts, it took a federal lawsuit for Defendants to amend the policy. *Id.* Judge Mitchell analyzes this claim as one alleging a violation of the right of familial association, as recognized in *Griffin v. Strong*, 983 F.3d 1544 (10th Cir. 1993). *See* R&R at 12 (citing *Griffin* and *Muniz-Savage v. Addison*, 647 F. App'x 899, 905-06 (10th Cir. 2016)).

The Tenth Circuit held in *Griffin* that "the right of [familial] association is properly based on the concept of liberty in the Fourteenth Amendment" and is protected as "a substantive due process right." *Griffin*, 983 F.3d at 1547. Under the applicable legal analysis, "a determination that a party's constitutional rights have been violated requires a balancing of liberty interests against the relevant state interests" under the facts of a particular case. *Id.* When the right of familial association is at stake, "to rise to the level

of a constitutional claim, the defendant must direct his or her statements or conduct at the intimate relationship with knowledge that the statement or conduct will adversely affect that relationship." *Id*. at 1548 (emphasis omitted).

Applying this standard in *Muniz-Savage*, the Tenth Circuit held that an inmate's ex-wife, who sought prison visitation for herself and the inmate's daughter, failed to state a § 1983 claim because "[t]he complaint contain[ed] no allegations that defendants intended or directed their conduct at the familial relationship with the knowledge that such conduct would adversely affect that relationship. Indeed, the lack of such intent is demonstrated by plaintiffs' allegations that the decision was 'arbitrary.'" *Muniz-Savage*, 647 F. App'x at 906. The same is true in this case. Plaintiff does not allege any facts to show that Defendants' juvenile visitation ban was directed at Plaintiff's relationship with his son, or at parental relationships generally, with knowledge that the ban would adversely affect the relationship.

Therefore, upon *de novo* consideration, the Court reaches the same conclusion as Judge Mitchell with respect to Plaintiff's claim based on a right of familial association. The Court finds that Plaintiff has failed to state a plausible § 1983 claim that Defendants' ban on juvenile visitation violated his right of familial association.

### 3. Interference With Parental Relationship

Like Claim 2 but designated as a separate Claim 3, Plaintiff asserts that Defendants violated a Fourteenth Amendment right by intentionally depriving him of a "sacred relationship" with his son by banning juvenile visitation. *See* Am. Compl. at 8. Plaintiff

asserts that he had a "fundamental right" to maintain a parental relationship with his minor child while awaiting trial. *Id*. at 7.[9]

The Court is aware of case law recognizing a fundamental liberty "interest of parents in the care, custody, and control of their children." *See Troxel v. Granville*, 530 U.S. 57, 65 (2000). In light of extensive precedent, "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id*. at 66 (discussing prior case law). Thus, for example, a criminal sentence imposing a condition of supervised release that prevents the defendant from having any contact with his son would be subject to heightened scrutiny and require compelling circumstances. *See United States v. Edgin*, 92 F.3d 1044, 1049 (10th Cir. 1996); *see also United States v. White*, 782 F.3d 1118, 1138 (10th Cir. 2015). Plaintiff does not allege any circumstance in this case that prevents all contact with his son, or bars Plaintiff from participating in decisions concerning the care, custody, and control of his son. Thus, the fundamental parental right at issue in the cited cases is not implicated by the juvenile visitation ban about which Plaintiff complains.

The Court therefore finds, upon *de novo* consideration of the issue presented, that Plaintiff has failed to state a plausible § 1983 claim based on a contention that Defendants'

---

[9] In a reply brief in support of his Objection, Plaintiff compares his asserted right to one implicated by the forced separation of families at the United States-Mexico border. *See* Reply Br. at 1-2. This brief is not properly before the Court. *See supra* note 2. Further, the analogy is inapt because the referenced cases involved immigration detention of minor children apart from parents seeking asylum from persecution. *See, e.g.*, *Ms. L. v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149, 1166-67 (S.D. Cal. 2018).

ban on juvenile visitation in the Cleveland County jail violated Plaintiff's constitutional right to a parental relationship with his son.

## Conclusion

For these reasons, the Court finds that Plaintiff has stated a plausible § 1983 claim that Defendants' ban of juvenile visitation constituted punishment of pretrial detainees in violation of the Fourteenth Amendment, and that Defendants are not entitled to dismissal of Plaintiff's action for failure to state a claim upon which relief can be granted.

IT IS THEREFORE ORDERED that the Report and Recommendation [Doc. No. 62] is ADOPTED only in part. Defendants Joseph K. Lester and Cleveland County Board of Commissioners' Motion to Dismiss [Doc. No. 45] is GRANTED in part and DENIED in part, as set forth herein.

IT IS FURTHER ORDERED that the case is re-referred to Judge Mitchell for further proceedings consistent with the initial case referral [Doc. No. 4].[10]

IT IS SO ORDERED this 17th day of August, 2018.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE

---

[10] This includes the re-referral of a pending motion filed by Plaintiff [Doc. No. 60], which Judge Mitchell found to be moot if the case was dismissed.